UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| SENTRY SELECT INSURANCE COMPANY, § § § *Plaintiff*, § § v. § § CHRISTIAN ULISES RUIZ; RUDOLPH § CHEVROLET, LLC; RUDOLPH § AUTOMOTIVE, LLC d/b/a RUDOLPH § MAZDA; MARCELO FLORES; and § LYNN CRAWFORD, § § *Defendants*. § § CHRISTIAN ULISES RUIZ; RUDOLPH § CHEVROLET, LLC; RUDOLPH § AUTOMOTIVE, LLC d/b/a RUDOLPH § MAZDA, § § *Third-Party Plaintiffs*, § v. § § NORTH AMERICAN CAPACITY § INSURANCE COMPANY, § § *Third-Party Defendant*. § § | EP-16-CV-00376-DCG |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case presents disputes over insurance coverage. Plaintiff Sentry Select Insurance Company ("Sentry") filed this declaratory judgment action against Defendants Rudolph Automotive, LLC d/b/a Rudolph Mazda ("Rudolph Mazda"), Rudolph Chevrolet, LLC ("Rudolph Chevrolet") (collectively, the "Rudolph Entities"), Christian Ulises Ruiz ("Ruiz"), Marcelo Flores ("Flores"), and Lynn Crawford ("Crawford") (collectively, "Defendants"). Sentry seeks declarations that under a policy it issued to the Rudolph Entities, it has no duty to defend or indemnify Defendants in connection with a lawsuit entitled *Andrea Juarez,*

*individually and as Permanent Guardian of Irma Vanessa Villegas, an incapacitated person* v. *Christian Ulises Ruiz, et. al.*, Cause No. 2015-DCV-0473, in the 384th Judicial District Court, El Paso County, Texas (hereinafter, the "Underlying Lawsuit"). The Underlying Lawsuit arose from an auto accident that occurred on the premises of Rudolph Mazda (a car dealership); Ruiz, an employee of Rudolph Mazda, hit Irma Vanessa Villegas ("Villegas"), a co-worker, with his vehicle. At the parties' request to try this case on written submission, the Court now enters its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).[1]

## I. PROCEDURAL HISTORY[2]

In August 2016, Sentry filed its Complaint (ECF No. 1) in this declaratory judgment action. Therein, it claims that it has no duty to defend or indemnify Defendants in the Underlying Lawsuit. Defendants filed an answer in November 2016. Moreover, Ruiz and the Rudolph Entities filed a counter-claim seeking declaratory judgment that Sentry has a duty to provide coverage, defend, and indemnify Defendants. Defs.' Original Answer at 11–12, ECF No. 12.

In July 2017, Sentry moved for summary judgment against Defendants. Pl.'s Mot. for Summ. J., ECF No. 25. On November 16, 2017, Sentry filed a motion for leave to supplement its motion for summary judgment, and on November 22, the parties filed a "Joint Motion to Try Case on Submission" (ECF No. 41), whereby they requested that the Court adjudicate their disputes based on stipulated facts and evidence. The Court denied Sentry's summary judgement

---

[1] To the extent that any finding of fact is more aptly characterized as a conclusion of law, or any conclusion of law is more aptly characterized as a finding of fact, the Court adopts it as such.

[2] The procedural history of this case has been chronicled to some extent in an earlier opinion issued by the Court. Mem. Op. & Order, *Sentry*, 2017 WL 2692643, at *1 (W.D. Tex. June 20, 2017), ECF No. 23. Here, the Court adds only those procedural events that are particularly relevant to its discussion below.

and leave motions, but granted the parties' joint motion to try the case on submission. Order, ECF No. 43.

On January 10, 2018, Sentry filed its opening "Trial Brief" (ECF No. 44) (hereinafter "Plaintiff's Trial Brief"), and on January 11, Defendants filed their opening "Trial Brief" (ECF No. 45) (hereinafter "Defendants' Trial Brief"). The parties filed their responsive and reply briefs by February 1. Resp. to Pl.'s Tr. Br., ECF No. 46; Reply to Pl.'s Tr. Br., 48; Resp. to Defs.' Tr. Br., ECF No. 47; Reply to Defs.' Tr. Br., ECF No. 49.

## II. FINDINGS OF FACTS

### A. The Policy

Sentry issued Policy No. 24-48715-07, the insurance policy at issue ("Policy"), which was in effect on the date of the auto accident. Joint Stipulations at 3. Rudolph Mazda and Rudolph Chevrolet are named insureds. Policy Excerpt at 2, ECF No. 40-1;[3] Joint Stipulations at 2. Their employees may also qualify as "insured[s]," if they meet certain conditions set forth in the Policy. Policy Excerpt at 50–52.

The Policy provides coverage for, *inter alia*, commercial property coverage, commercial garage liability coverage, and commercial excess/umbrella liability coverage. *Id.* at 2, 14, 172, ECF No. 40-1; Finn Aff. at 2, ECF No. 26-1. Only the parts of the Policy regarding the garage liability coverage and excess/umbrella liability coverage are at issue in this lawsuit. Joint Stipulations at 3.

### 1. *Commercial Garage Liability Coverage*

Under the commercial garage liability coverage part of the Policy, Sentry assumed, subject to any applicable limitation and exclusion, the duty to "pay all sums an 'insured' legally

---

[3] Throughout this opinion, all citations to exhibits refer to the Electronic Case Filing (ECF) page numbers imprinted on the pages of the exhibits.

must pay as damages . . . because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from 'garage operations' involving the ownership, maintenance or use of" any auto. Policy Excerpt at 46, 50. "Garage operations" mean "the ownership, maintenance or use of locations for garage business" and "include all operations necessary or incidental to a garage business." *Id.* at 80.

Through a broadened coverage endorsement, Sentry further assumed, subject to any applicable limitation and exclusion, the duty to:

> pay all sums the "insured" legally must pay as damages because of "bodily injury" . . . arising out of the giving or serving of alcoholic beverages at *functions incidental* to your garage business provided you are not engaged in the business of manufacturing, distributing, selling or serving of alcoholic beverages.

*Id.* at 127 (emphasis added). Heretofore, this broadened coverage will be referred to as the "Host Liquor Liability" coverage. Sentry assumed, subject to any applicable limitation and exclusion, the "duty to defend any 'insured' against a 'suit' asking for *such damages*." *Id.* at 50 (emphasis added).

The garage liability coverage part of the Policy contains an exclusionary clause, under the heading "Employee Indemnification and Employers Liability," which provides in relevant part: "This insurance does not apply to . . . 'Bodily injury' to[] [a]n 'employee' of the 'insured' arising out of and in the course of: (1) Employment by the 'insured'; or (2) Performing the duties related to the conduct of the "insured's business[.]" *Id.* at 53. Heretofore, this exclusion will be referred to as the "Employer's Liability" exclusion.

## 2. Commercial Excess/Umbrella Liability Coverage

As to the excess liability coverage, Sentry assumed, subject to any applicable limitation and exclusion, the duty to "pay on behalf of the insured the 'ultimate net loss' in excess of 'underlying insurance' because of[] . . . "Bodily injury" . . . to which this insurance applies." *Id.* at 177. "Ultimate net loss" is defined as "the total sum, after reduction for recoveries . . . , that the insured becomes legally obligated to pay as damages by reason of settlement or judgments . . . ." *Id.* at 194. That part of the Policy provides: "When the limits of the 'underlying insurance' have been used up in the payment of judgments or settlements, [Sentry] will have the[] . . . duty to defend the insured against any 'suit.'" *Id.* at 177. "'Underlying insurance' means any policies of insurance listed in the Declarations under the schedule of 'underlying insurance.'" *Id.* at 198. The excess coverage does not apply to "'Bodily injury' . . . to which 'underlying insurance' does not apply for any reason other than the exhaustion of 'underlying insurance' limits of liability." *Id.* at 178.

As to the umbrella liability coverage, Sentry assumed, subject to any applicable limitation and exclusion, the duty to "pay on behalf of the insured the 'ultimate net loss' in excess of the Retained Limit stated in the Declarations because of 'bodily injury' . . . to which this insurance applies," but only if the "'[u]nderlying insurance' does not apply," *id.* at 179; the Retained Limit as stated in the Declarations is "none," *id.* at 172. The umbrella liability coverage section of the Policy provides: "In the absence of 'underlying insurance', [Sentry] will have the[] . . . duty to defend the insured against any 'suit.'" *Id.* at 180. That section contains an exclusion that is identical to the "Employer's Liability" exclusion in the garage liability coverage part of the Policy. *Id.*

## B. The Underlying Lawsuit

On February 17, 2015, Villegas, through Andrea Juarez, brought the Underlying Lawsuit by filing her original petition, which named Ruiz as the sole defendant. State Ct. Pleadings at 1, ECF No. 40-4. Subsequently, Villegas filed multiple supplemental pleadings and joined Flores, Crawford, and the Rudolph Entities as defendants. *Id.* at 42.

According to these pleadings, at the relevant time, Flores and Crawford were managers of Rudolph Mazda. *See id.* at 44 (" . . . Defendant RUDOLPH MAZDA managers (MARCELO FLORES and LYNN CRAWFORD . . . ")); *see also id.* 48 (describing Flores and Crawford as "managers and vice principals of . . . Rudolph Mazda"). The pleadings refer to Villegas and Ruiz as the Rudolph Entities' sales people, *id.* at 44 ("Defendants RUDOLPH had its [*sic*] sales people including Defendant RUIZ and IRMA VANESSA VILLEGAS . . .").

The allegations in the Underlying Lawsuit were in part as follows: To further their business, the Rudolph Entities had their sales people, including Ruiz and Villegas, begin work at 9:00 am, provided lunch on their premises to keep them on premises and sell its inventory, and had a policy that the sales people would stay as long as needed, sometimes until 10:00 pm. *Id.* at 44. On December 27, 2013, Flores sent Ruiz to a store during working hours to buy beer. *Id.* The beer was placed in the Rudolph Entities' refrigerator for consumption on their premises by sales people that night. *Id.* After Ruiz had consumed alcohol on Rudolph Mazda's premises with Flores and Crawford, he struck Villegas with his vehicle in the front sales/service area of Rudolph Mazda's premises at 1301 N. Lee Trevino Dr., El Paso, Texas; at the time, Villegas was a pedestrian crossing Rudolph Mazda's parking lot. *Id.* at 2, 44. As a result of this collision, she sustained injuries to her head, neck, and other parts of her body. *Id.* at 44.

In the Underlying Lawsuit, which is currently pending, *see e.g.*, Pl.'s Tr. Br. at 4, Villegas asserted several causes of action; among them were: negligence against Ruiz, negligence against Flores and Crawford, and vicarious liability against the Rudolph Entities. *Id.* at 45–48. She claimed that Ruiz owed a degree of reasonable care on operation of a motor vehicle to Villegas and that the collision and Villegas's damages were proximately caused by Ruiz's negligence. *Id.* at 45. She averred that Flores and Crawford, Rudolph Mazda's managers, were individually negligent for purchasing and providing alcohol for their employees on business premises, knowing full well that the employees would have to drive a motor vehicle on the business premises as well as on the public streets. *Id.* at 48. She claimed that the Rudolph Entities were vicariously liable for her damages and injuries, which were caused by the negligence of Ruiz, Flores, and Crawford. *Id.* at 47. She also claimed that a joint venture/joint enterprise existed between Rudolph Chevrolet and Rudolph Mazda, and therefore they were jointly and severally liable for the damages sustained by her. *Id.* at 45–46. She sought monetary relief over one million dollars and all other relief to which she is entitled. *Id.* at 3, 50.

In October 2014, Sentry sent a reservation of right letter to the Rudolph Entities, after receiving notice of claim. *See* Letter from Renee Schude of Sentry to Soraya Hanshew, counsel for the Rudolph Entities, ECF No. 40-2. Therein, it took the position that there would be no coverage under the Policy if Villegas was in the course and scope of her employment at the time of the accident. *Id.* at 4–5.

## III. CONCLUSIONS OF LAW

### A. Applicable law

The Court is exercising its diversity jurisdiction; so, it applies Texas law to this case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938); *Holt v. State Farm Fire & Cas. Co.* 627 F.3d 188, 191 (5th Cir. 2010).

#### *1. Duty to Defend*

Under Texas law, an insurer's duty to defend is determined by application of the so-called "eight-corners rule." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (*per curiam*). "Under that rule, courts look to the facts alleged within the four corners of the pleadings [in the underlying lawsuit], measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy." *Ewing Const. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014). In making the foregoing determination, a court "focuses on the factual allegations that show the origin of the damages rather than on the legal theories advanced," *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 426–27 (5th Cir. 2016) (internal quotation marks omitted), and considers them "without regard to their truth or falsity," *Ewing Const. Co.*, 420 S.W.3d at 33.

In applying the rule, "the insured bears the burden of showing that the claim against it is potentially within the policy's coverage," while "the insurer bears the burden of establishing that an exclusion in the policy constitutes an avoidance of or affirmative defense to coverage." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996). The rule is to be applied liberally, resolving all doubts in favor of the insured. *Standard Waste Sys. Ltd. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 399 (5th Cir. 2010) (quotation marks omitted).

Moreover, the eight-corners rule "strictly circumscribes a court's analysis of the duty to defend": "a court may not read facts into the pleadings, look outside the pleadings, or speculate as to factual scenarios that might trigger coverage or create an ambiguity." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011) (internal quotation marks and brackets omitted). However, the Fifth Circuit made an "*Erie* guess"[4] that an exception to the strict eight-corners rule is warranted in very limited circumstances: the use of extrinsic evidence is permitted only "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."[5] *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).

## 2. Duty to Indemnify

The duty to indemnify and the duty to defend are "'distinct and separate duties." *D.R. Horton-Texas, Ltd. v. Markel Intern. Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009). While the duty to defend is determined based on the allegations in the complaint in the underlying action, "it is well settled that the 'facts actually established in the underlying suit control the duty to indemnify.'" *Id.* at 744 (quoting *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009)). Consequently, as a general rule, "the duty to indemnify . . . cannot be adjudicated until there has been a judgment in the underlying suit because facts proven at trial may differ slightly from the allegations." *DP Eng'g*, 827 F.3d at 430.

---

[4] Although "[t]he Texas Supreme Court has never recognized any exception" to the rule, *Gilbane Bldg.*, 664 F.3d at 596 (internal quotation marks omitted), its decision in *GuideOne Elite Insurance Company v. Fielder Road Baptist Church*, 197 S.W.3d 305 (Tex. 2006), supports the Fifth's Circuit's *Erie* guess. *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 475–76 (5th Cir. 2009).

[5] Here, the parties submitted "Joint Stipulations of Facts" (ECF No. 40). However, to a large extent, their stipulations are unhelpful on the issue of duty to defend.

The only exception to this rule is "when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). A *Griffin* determination that the same reasons that eliminate the duty to defend also eliminate the duty to indemnify is "fact-specific." *Griffin*, 955 S.W.2d at 84. Where the principles underlying *Griffin* are inapplicable to a case, the court "may need to 'defer resolution of indemnity issues until the liability litigation is resolved.'" *DP Eng'g*, 827 F.3d at 431 (quoting *Griffin*, 955 S.W.2d at 84). Alternatively, "if the trials do not resolve all factual issues related to coverage, the parties may offer additional evidence to determine whether [the insurer] has a duty to indemnify." *Id.* (citing *D.R. Horton*, 300 S.W.3d at 744).

### 3. Interpretation of Insurance Policies

Texas courts "construe insurance policies according to the same rules of construction that apply to contracts generally." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008). "Effectuating the parties' expressed intent is [the] primary concern." *Id.* Courts give policy language "its ordinary and generally accepted meaning unless the policy shows that the words used are intended to impart a technical or different meaning." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). "To determine the ordinary meaning of a term not defined in the contract, [Texas] courts typically begin with the dictionary definition." *Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 876 F.3d 119, 128 (5th Cir. 2017). "They then consider the term's usage in other authorities, such as prior court decisions." *Id.*

"If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous," *Schaefer*, 124 S.W.3d at 157, and a court "must enforce it as written," *Don's*

*Bldg.*, 267 S.W.3d at 23. "A provision is not ambiguous 'simply because the parties interpret a policy differently.'" *United Nat. Ins. Co. v. Mundell Terminal Servs., Inc.*, 740 F.3d 1022, 1027 (5th Cir. 2014) (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010)). "Rather, a court will find a term ambiguous if 'the language of a policy ... is subject to two or more reasonable interpretations.'" *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). "If a contract is ambiguous, such ambiguity will be construed against the insurer." *Id.*

## B. Discussion

As an initial matter, Sentry, in its opening brief, has argued at length why it has no duty to defend or indemnify Ruiz, Flores, or Crawford—because, as Sentry asserts, they are not insureds (for purposes of the garage liability coverage) or "Named Insured[s]" (for purposes of the excess/umbrella liability coverage). Pl.'s Tr. Br. at 10–14, 23, 25. Defendants have not responded to these arguments.[6] Consequently, the Court finds, as undisputed, that Sentry has no duty to defend or indemnify Ruiz, Flores, or Crawford. Below, the Court addresses only whether Sentry has a duty to defendant and indemnify the Rudolph Entities.

### *1. Summary of the Parties' Arguments*

Defendants claim that, under the garage liability coverage, Sentry has a duty to defend and indemnify the Rudolph Entities based on the Host Liquor Liability coverage provision. Defs.' Tr. Br. at 4. It argues that the only exclusion that may arguably exclude coverage is the Employer's Liability exclusion, but the allegations in the Underlying Lawsuit show that the exclusion does not apply. *Id.* Sentry disputes these arguments. The crux of Sentry's arguments

---

[6] *See* Reply to Pl.'s Tr. Br. at ("Defendants do not address at all the evidence and authorities laid out by Sentry on pages 10-15 of its trial brief (Doc. No. 44) showing that no duty to defend or indemnify is owed to Ruiz, Crawford or Flores.").

is that the Employer's Liability exclusion excludes coverage, and therefore, it has no duty to defend or indemnity under the garage liability coverage. Pl.'s Tr. Br. at 15–21, 23.

With respect to the excess liability coverage, Sentry points out an exclusion in the excess liability coverage section of the Policy, *see* Policy Excerpts at 177–78 ("This insurance does not apply to[] . . . 'Bodily injury' . . . to which 'underlying insurance' does not apply for any reason other than the exhaustion of 'underlying insurance' limits of liability."), and argues that because the garage liability coverage (*i.e.*, the underlying insurance) would not apply to the Rudolph Entities (due to the Employer's Liability exclusion), the excess liability coverage would also not apply, *see* Pl.'s Tr. Br. at 22–23. It claims, therefore, that under the excess liability coverage, Sentry has no duty to defend or indemnify them in the Underlying Lawsuit. *See* Compl. at 23–24.

With respect to the umbrella liability coverage, Sentry points out that an exclusion in that section of the Policy is identical to the Employer's Liability exclusion. Pl.'s Tr. Br. at 23. Consequently, it claims, for "the same reason set forth above," "no coverage would exist under the umbrella liability coverage" of the Policy. Pl.'s Tr. Br. at 23. Defendants dispute Sentry's claims as to the excess and umbrella liability coverage, on the basis of the same argument that the Employer's Liability exclusion does not apply. *See* Defs.' Tr. Br. at 18–19.

## 2. *Whether Sentry Has a Duty to Defend the Rudolph Entities*

As the parties' arguments reflect, the issues of whether the Host Liquor Liability coverage and the Employer's Liability exclusion apply are dispositive on the question of whether Sentry has a duty to defend the Rudolph Entities in the Underlying Lawsuit. The Court addresses them in turn.

### (a) The Host Liquor Liability Coverage

The parties dispute only whether the December 27, 2013 beer consumption event at Rodolph Mazda's premises falls within the scope of the term "function" as used in the Host Liquor Liability coverage endorsement. Under it, coverage is broadened to include "'bodily injury' . . . arising out of the giving or serving of alcoholic beverages at *functions* incidental to your garage business provided you are not engaged in the business of manufacturing, distributing, selling or serving of alcoholic beverages." Policy Excerpts at 127, *supra* (emphasis added).

Specifically, relying on the dictionary definition of "function,"[7] Defendants argue that any social gathering can be a "function" and as such, the event as alleged in the Underlying Lawsuit was a "function" for purposes of the Host Liquor Liability provision. Defs.' Tr. Br. at 17–18. Sentry responds that the Host Liquor Liability provision "*only* applies to company functions such as company Christmas parties, company picnics, etc." Pl.'s Tr. Br. at 21 (emphasis added). Characterizing the event as a gathering of "a few employees . . . [who] stayed after work to socialize" at Rudolph Mazda's premises, Sentry contends that "no function took place." *Id.* at 22. In other words, "function," in Sentry's view, excludes a particular type of social gatherings, but not other.

The Policy does not define the term "function." The Court has not been cited, nor is it aware of, any Texas court decision interpreting or applying the term in the context of the Host

---

[7] Defs.' Tr. Br. at 17 ("The Merriam-Webster dictionary defines "function" as '4: an official or formal ceremony or social gathering'" (quoting Merriam-Webster Online Dictionary. 2018. https://www.merriamwebster.com/dictionary/function ); *see also* Webster's Third New Int'l Dictionary of the English Language Unabridged 920–21 (3rd ed. 2002) (defining "function" as "an often formal public or social ceremony or gathering"); Am. Heritage Dictionary of the English Language 710 (5th ed. 2011) (defining "function" as "[a]n official ceremony or a formal social occasion"); Random House Webster's Unabridged Dictionary 775 (2nd ed. 2001) (defining "function" as "any ceremonious public or social gathering or occasion"); Am. Heritage Dictionary of the English Language 1223 (defining "official" as "[a]uthorized by a proper authority").

Liquor Liability coverage. Two courts in other jurisdictions have construed it to *include*, "cocktail part[ies]," *Heritage Ins. Co. of Am. v. Cilano*, 433 So. 2d 1334, 1335 (Fla. 4th DCA 1983), and "Christmas parties," *Zurich Insurance Co. v. Uptowner Inns, Inc.*, 740 F. Supp 404, 407 (S.D. W. Va. 1990), hosted or put on by an insured business entity.

Sentry relies on *Uptowner Inns* and *Hagan v. State Farm Insurance Company*, CIV. A. No. 87-0452, 1989 WL 17362 *2 (D.D.C. 1989)), in support of its proposition that "function" is limited to company Christmas parties, picnics, and the like, but excludes an after-work social gathering of a few employees. *See* Pl.'s Tr. Br. at 21–22. These cases, however, do not support that proposition. In *Uptown Inns*, the court stated that "[t]he provision, in essence, provides coverage when Uptowner [a hotel operator] hosts Christmas parties for customers, social functions pursuant to solicitation of business for the hotel, and like functions," *Uptowner Inns, Inc.*, 740 F. Supp at 407, but the court did not go so far as to say that *only* those and the like events fall within the scope of "function." In *Hagan*, on the other hand, the court did not decide the meaning or scope of the term "function"; rather, the *Hagan* court was faced with the issue of whether certain after-work drinking at a bar and drinking at lunch were "incidental to the named insured's business." *Hagan*, 1989 WL 17362, at *2; *cf.* Policy Excerpts at 127 (". . . at functions *incidental to your garage business* . . . ." (emphasis added)). *Hagan* does not aid Sentry on its dispute over "function."

Sentry points to nothing in the Policy that evinces that the contracting parties intended the term "function" to exclude a particular type of social gathering, such as an after-work gathering of a few employees for beer consumption. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991) ("An intent to exclude coverage must be expressed in clear and unambiguous language."). Had the parties so intended, "it would have

-14-

been simple to have said so." *See Gilbert Texas Const.*, 327 S.W.3d at 127; *see also id.* ("The parties' intent is governed by what they said in the insurance contract, not by what one side or the other alleges they intended to say but did not."). The Court therefore rejects Sentry's arguments.

Turning to the factual allegations in the Underlying Lawsuit, Villegas asserted the following. The Rudolph Entities, to further their business, provided lunch on their premises to their sales people so as to keep them on premises and sell their inventory. State Ct. Pleadings at 44. On December 27, 2013, Flores and Crawford (Rudolph Mazda's managers) provided beer for consumption that night by the Rudolph Entities' sales people on Rudolph Mazda's premises. *Id.* at 44, 45. This beer consumption was "authorized by" Flores and Crawford. *Id.* at 44. The beer was purchased by Flores and Crawford, and on that day, Flores sent Ruiz to a store during working hours to buy the beer. *Id.* The beer was kept in the Rudolph Entities' refrigerator; and Ruiz consumed the beer with Flores and Crawford on Rudolph Mazda's premises. *Id.*

Taking these allegations as true and reading them "liberally in favor of the insured," *Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 310 (5th Cir. 2010), the Court finds that the alleged gathering of the Rudolph Entities' employees for the consumption of beer on Rudolph Mazda's premises constitutes a "function" for purposes of the Host Liquor Liability coverage. Accordingly, Sentry has a duty to defend the Rudolph Entities, unless an exclusion applies.

### (b) The Employer's Liability Exclusion

Sentry argues that even if the allegations in the Underlying Lawsuit fit within the term "function," no coverage would exist for the Rudolph Entities because of the Employer's Liability exclusion. *See* Pl.'s Tr. Br. at 22. That exclusion excludes from coverage "'Bodily injury' to[] [a]n 'employee' of the 'insured' arising out of and *in the course of*[] . . . Employment by the

'insured' . . . ." Policy Excerpts at 53 (emphasis added). The parties' dispute turns on whether Villegas's injury was in the course of her employment. *Compare* Resp. to Pl.'s Tr. Br. at 6, *with* Reply to Pl.s' Tr. Br. at 7-8.

Sentry relies on the "access doctrine," which "is used by courts in workers' compensation cases as a limited exception to the more general rule recognizing that compensation benefits do not extend to injuries incurred by employees going to and from work." *OCI Beaumont LLC v. Barajas*, 520 S.W.3d 83, 85 n.1 (Tex. App.—Beaumont 2017, no pet.) (citing *Tex. Comp. Ins. Co. v. Matthews*, 519 S.W.2d 630, 631 (Tex. 1974)).[8] It then argues that when Villegas was struck by Ruiz's vehicle in Rudolph Mazda's parking lot, she was in the process of leaving the premises after work that day, and therefore, her injuries would be "in the course and scope of employment" under the doctrine. Pl.'s Tr. Br. 17–18. Consequently, Sentry claims, the Employer's Liability exclusion would apply. *Id.*

Defendants respond that the "access doctrine" is inapplicable here. Resp. to Pl.'s Tr. Br. at 2–3. In support, it cites cases, where Texas courts have declined to apply the "access doctrine" in the vicarious-liability/common-law context. *Id.* Sentry, on the other hand, cites cases where Texas courts have applied certain principles from workers' compensation cases to the common-law context and responds that there is no difference in common law and workers' compensation cases. Resp. to Defs.' Tr. Br. 6–7. The parties' dispute over "in the course of employment" thus spins off to another direction: whether or not workers' compensation principles apply in the vicarious-liability/common-law context. That, however, is not the issue

---

[8] Under the "access doctrine," "employees injured while going to or from work, if on routes designated by their employers and at locations near where they work, may receive compensation benefits 'where such access route or area is so closely related to the employer's premises as to be fairly treated as a part of the premises.'" *OCI Beaumont LLC*, 520 S.W.3d at 85 n.1 (quoting *Matthews*, 519 S.W.2d at 631)).

presented by Sentry's initial argument; instead, the issue is: whether workers' compensation principles, such as the access doctrine, are applicable in construing a term in an insurance policy.

On that issue, *Nautilus Insurance Company v. Zamora*, 114 F.3d 536 (5th Cir. 1997), a case involving insurance coverage disputes, is instructive. There, the insurance policy excluded, *inter alia*, bodily injury to "[a]n employee of the insured arising out of and in the course of employment by the insured; . . . ." *Zamora*, 114 F.3d at 537. In construing the phrase "arising out of," the lower court had "imported" the "positional risk" or "but for" test which is commonly applied in workers' compensation cases. *Id.* at 538. The Fifth Circuit panel disapproved. Making an "*Erie* guess," it stated: "We cannot conclude, however, that the Texas Supreme Court would turn to workers' compensation principles as a means of interpreting the terms of an insurance contract." *Id.* It reasoned that "the positional-risk doctrine is a judicially created tool for interpreting Texas's workers' compensation statute, and not used for the purpose of interpreting insurance contracts." *Id.*

In view of *Zamora*, the Court declines to import the "access doctrine" here to interpret the Policy term "in the course of employment." *See Parra v. Markel Int'l Ins. Co.*, No. CV L-06-59, 2007 WL 9627570, at *8 n.6 (S.D. Tex. Dec. 11, 2007) ("[T]he Texas Supreme Court has not indicated that courts should engage in policy analysis to ascertain a contract's meaning." (citing *Zamora*, 114 F.3d at 538)), *aff'd*, 300 F. App'x 317 (5th Cir. 2008).

The Court therefore turns to the task of construing the phrase "in the course of . . . [E]mployment," which is not defined in the Policy. The dictionary meaning of "in the course of" is "during and as a part of the specified activity." New Oxford Am. Dictionary 398 (3rd ed. 2010). Turning to "the term's usage in . . . prior court decisions," *see Cooper Indus.*, 876 F.3d at 128, the Court finds two cases that are relevant to the meaning of the phrase. First, in *Zamora*,

discussed *supra*, the Fifth Circuit panel noted that "in an uninterrupted line of cases, Texas courts (including the Texas Supreme Court) have consistently interpreted policy language identical to that in this case [as here, the Employer's Liability exclusion provision] and come to the conclusion that the language unambiguously excludes from coverage injuries occurring *while the employee is performing work-related duties*." *Zamora*, 114 F.3d at 538–39 (emphasis added) (collecting cases).

Second, *Arrellano v. State Farm Fire and Casualty Company*, 191 S.W.3d 852 (Tex. App.—Houston [14th] 2006, no pet.)—a case on which Sentry relies, Pl.'s Tr. Br. at 22—involved an insurance policy that excluded coverage for bodily injury to "[a]n employee of the insured arising out of and in the course of employment by the insured." *Arrellano*, 191 S.W.3d at 855 n.1. The Texas appellate court held that the employee, who died from an accident, was in the course of his employment at the time of the accident, in part because he performed project clean-up activities immediately before the accident and the work-related activities would not have been completed for approximately another fifteen to twenty minutes when the accident occurred. *Id.* at 858.

These cases suggest, and the Court concludes, that the phrase "in the course of . . . [e]mployment" as used in the Employer's Liability exclusion means "while the employee is performing work-related duties." *See Sec. Indus. Ins. Co. v. Cigna Prop. & Cas. Co.*, No. CIV. A. 96-2835, 1997 WL 403415, at *3 (E.D. La. July 16, 1997) (defining "in the course of employment" as "while [the employees] were engaging in their work duties").

Here, the parties agree that the accident and injury occurred after Villegas had ended her work on that day, as she was in the process of leaving the Rudolph Mazda's premises. *See* Pl.'s Tr. Br. 17–18 ("As Ms. Villegas was in the process of leaving the premises *after working that*

*day* when she was struck by Mr. Ruiz's vehicle in the parking lot of the dealership . . . ." (emphasis added)); Defs.' Tr. Br. at 13 ("the Accident occurred when Ruiz and Villegas were *off duty*, in the parking lot, as they were leaving Rudolph's premises." (emphasis added)). The Court therefore finds that Villegas was not in the course of her employment when her injury occurred, and therefore, the Employer's Liability exclusion does not apply.

In sum, therefore, the Court finds that—under the garage liability coverage, excess liability coverage, and umbrella liability coverage of the Policy—Sentry has a duty to defend the Rudolph Entities in the Underlying Lawsuit.

### 3. *Whether Sentry Has a Duty to Indemnify the Rudolph Entities*

Relying on *Griffin*, 955 S.W.2d 81, *supra*, Sentry argues that "[f]or all of the reasons set forth above that Sentry has no duty to defend," it has no duty to indemnify the Rudolph Entities. Pl.'s Tr. Br. at 25. As discussed, the Court has found that Sentry's reasons that it has no duty to defend lack merits. It further finds that the principles underlying *Griffin* are inapplicable here. Accordingly, the Court defers ruling on the question of whether—under the garage liability coverage, excess liability coverage, or umbrella liability coverage of the Policy—Sentry has a duty to indemnify the Rudolph Entities until the Underlying Lawsuit is resolved.[9] *See DP Eng'g*, 827 F.3d at 431, *supra*.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **DECLARES** that—under the parts of the policy numbered 24-48715-07 on the garage liability coverage, excess liability coverage, and umbrella liability coverage—Sentry has no duty to defend or indemnify Ruiz, Flores, and Crawford in the Underlying Lawsuit.

---

[9] The Court declines to reach Sentry's alternate basis for finding that it has no duty to indemnify because there would be no duty owed by Rudolph Chevrolet to Villegas. Pl.'s Tr. Br. at 25.

The Court further **DECLARES** that—under the parts of the policy numbered 24-48715-07 on the garage liability coverage, excess liability coverage, and umbrella liability coverage—Sentry has a duty to defend the Rudolph Entities in the Underlying Lawsuit.

Finally, the Court **ORDERS** that the District Clerk **SHALL ADMINISTRATIVELY CLOSE** the Case pending resolution of the Underlying Lawsuit. Any party may file a petition with the Court to re-open the Case upon final resolution of the lawsuit, or upon settlement.

So **ORDERED and SIGNED** this 20th day of June 2018.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE